WENTWORTH, Judge.
Appellants White and the Florida Department of Health and Rehabilitative Services seek review of a final summary judgment entered on an amended complaint to determine paternity under Chapter 742, Florida Statutes. We find that disputed issues of material fact were presented which pre-eluded entry of summary judgment. The order is therefore reversed.
The amended complaint fully disclosed the facts of White’s brief marriage and a prior paternity action. It alleged the birth of White’s son Jarrell on July 4, 1980 “as a result of” sexual intercourse between White and defendant Kenneth Francis, and stated (1) that she “had sexual relations with both Harrell R. Thomas and Kenneth Francis at the time of conception”; (2) that a prior paternity action against Thomas was voluntarily dismissed when Thomas “was excluded as the father of the minor child by the HLA test”; and (3) that White had married Adam Wilson five months before the birth “to have a name for her child.” Both paternity complaints are consistent with her contention that she “did not have sexual relations with ... Wilson during the time the child was conceived.” They were divorced in 1981 by a judgment adopting the parties’ stipulation that White “does not desire to contest the husband’s ... repudiation of fatherhood” of Jarrell.
The motion for summary judgment asserts White is not worthy of belief nor entitled to any relief, alleging that the above quoted verified amended complaint herein contradicts her sworn statements in the divorce petition asserting Jarrell was “bom of this marriage,” and, in the paternity complaint against Thomas, that the child was born “as a result of” White’s intercourse with him.[1] In appellee’s deposition, admitted in evidence at the hearing on the motion, he admitted having sexual relations with White prior to the birth of the child.[2] Appellants reasserted a request for blood testing, but the court mooted that request by granting summary judgment after colloquy as follows:
*948 THE COURT: How can she have come in and been a credible witness and create a tryable issue of fact when she has lied twice under oath in this court.... Who am I go going [sic] to believe? She had sworn testimony she didn’t have any sexual contact with anybody else but her husband during the time and also with that man Thomas that you all found was not the father. She said she didn’t have any sexual contact. Now how is that going to make her credible at this time? ... can’t I look at sworn affidavits and, if they are in conflict, and determine who is committing perjury?
[[Image here]]
[COUNSEL]: I am not in agreement with the Court that she has lied.... The man has testified that he had sex with her.
THE COURT: But he didn’t say he was the father, did he? And she said he wasn’t—
[COUNSEL]: She doesn’t know, either. Scientific evidence will help clarify that, Your Honor, (e.s.)
The court’s conclusions apparently rest on an assumption that, in her prior actions against Wilson for divorce and against Thomas for paternity, White swore that (in the words of the court, supra) “she didn’t have any sexual contact with anybody but her husband ... and ... Thomas.” The record reflects instead a more general con-clusory assertion in the divorce complaint that the child was “bom of this marriage” and, after judgment based on stipulated acceptance of Wilson’s repudiation, an assertion against Thomas that the birth occurred “as a result of” intercourse with him. Neither document alleges absence of other sexual contact, and the amended complaint herein removed that language which appeared only in the complaint initially dismissed in the present proceeding.
Without resolving the perjury accusations, and with all due respect for the trial court’s concern for consistency and respect for legal process, this appeal should be decided on the recognized rule that on motion for summary judgment a trial court “is not authorized to try or weigh facts” and “may not ... consider ... the credibility of the witnesses in determining whether there exists a genuine issue of material fact,” even if the judge who determines the motion will ultimately become factfinder after hearing on the merits. Jones v. Stoutenburgh, 91 So.2d 299, 302 (Fla.1956); Coquina Ridge Properties v. East West Company, 255 So.2d 279 (Fla. 4th DCA 1971). Neither a presumption of legitimacy based on marital status, nor the circumstance that a party has identified more than one putative father by either a serial or single complaint, precludes trial of a paternity action under the statutes invoked by appellants. Holliman v. Green, 439 So.2d 955 (Fla. 1st DCA 1983); cf., Escarmant v. Knight, 420 So.2d 942 (Fla.3d DCA 1982), as to potential impact of inconsistent paternity claims upon credibility issues in an evidentiary hearing on the merits.
Upon consideration of the above stated facts, apparent from the pleadings and record before the court, the ultimate issue of paternity[3] remains in dispute. Summary judgment was therefore improperly entered absent the filing of an answer by appellee and opportunity for a hearing on the disputed issue.
The order is reversed and the cause remanded for further consistent proceedings.
NIMMONS and ZEHMER, JJ., concur.

. The motion makes no reference to the facially inconsistent language of the initial form complaint herein, previously dismissed with leave to amend, which described the child as "out of wedlock” but also referenced her marriage to Wilson "when the child ... was born, but was separated ... and did not have sexual relations with him or with any other male other than [Francis] dining the time the child (ren) was /were conceived." (e.s.)

. White’s deposition was also admitted but the record here contains only a reference by counsel, in response to the court’s inquiry, that White recalled her first sexual contact with Francis as "a memorable event because he is a school administrator and this first encounter happened in the school building.” Her amended complaint explains she filed her first paternity complaint against Thomas because she "was more sexually active with ... Thomas— Kenneth Francis was married.”

. Recent opinions have noted in other procedural contexts that a paternity action should not be viewed "as if it were simply a claim between private parties to enforce a monetary obligation," and we reversed a default judgment "[bjecause of the serious consequences that may flow from a determination ... and in view of the now-recognized reliability of the HLA test to establish the probability of paternity rather than merely exclude a person as the father.” Locklear v. Sampson, 478 So.2d 1113 (Fla. 1st DCA 1985).